UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LILIANA M. MESKE,<br><br>                    Plaintiff,<br><br>          v.<br><br>AMANDA RENZELMAN,<br>individually and in her official capacity;<br>DON W. ANDERSON, individually<br>and in his official capacity; ASOTIN<br>COUNTY, a political subdivision of the<br>State of Washington, and JOHN DOE<br>1-10,<br><br>                    Defendants. | No.    2:15-cv-00359-SMJ<br><br>**ORDER DENYING<br>DEFENDANTS' MOTIONS FOR<br>SUMMARY JUDGMENT** |

## I.    INTRODUCTION

In the late afternoon on January 5, 2015, Plaintiff Liliana Meske was arrested for driving under the influence (DUI) and taken to the Asotin County Jail. At the jail, Ms. Meske was restrained, forcibly stripped of her clothing, and placed in a suicide smock. She suffered serious injuries in this process, including a broken rib and a contusion on her head. The officers involved in booking Ms. Meske, Deputy Amanda Renzelman and Sgt. Don Anderson, assert that Ms. Meske was belligerent, suicidal, and refusing to comply with their directions.

They insist their use of force was necessary and reasonable. They also assert that Ms. Meske's injuries resulted from her falling and hitting her head on the wall and hitting her chest on a stool. Ms. Meske acknowledges having limited memory of what happened.

Ms. Meske alleges that Deputy Renzelman and Sgt. Anderson used excessive force in violation of her Fourth, Eighth and Fourteenth Amendment rights. ECF No. 1 at 6–7. She also makes state-law battery and emotional distress claims. ECF No. 1 at 7–8. Defendants move for summary judgment on each of these claims, arguing that (1) Ms. Meske has not alleged a basis for municipal liability against Asotin County under 42 U.S.C. § 1983; (2) the use of force by corrections officers was reasonable; and (3) even if the use of force was a constitutional violation, the officers are entitled to qualified immunity.[1] For the reasons discussed below, Ms. Meske has alleged a basis for municipal liability against Asotin County, the individual defendants have not, on the present record, demonstrated that they are entitled to qualified immunity, and issues of fact

---

[1]  Defendants filed a separate motion for partial summary judgment for failure to produce and compute damages. ECF No. 41. Defendants argue that Ms. Meske's claims for loss of income must be dismissed because she has failed to produce and compute damages to support the claim as required under Rule 26. At the hearing on this motion, Ms. Meske's counsel acknowledged that she has no claim for lost wages. Accordingly, Defendants' motion is granted and Ms. Meske's claim for lost wages is dismissed.

preclude summary judgment on each of Ms. Meske's claims. Accordingly, Defendants' motion for summary judgment is denied.

## II.    BACKGROUND

On January 5, 2015, in the late afternoon, Ms. Meske was arrested for DUI and transported to the Asotin County Jail, where she was booked. ECF No. 37 at 4-5; ECF No. 36 at 2. The corrections officers involved in booking Ms. Meske, Deputy Renzelman and Sgt. Anderson, aver that she appeared intoxicated, was uncooperative, and said she was suicidal. ECF No. 36 at 2; ECF No. 39 at 2. Ms. Meske refused requests to submit a breath sample. ECF No. 70 at 6.

Ms. Meske told the officer who arrested her and Sgt. Anderson at the jail that she had recently tried to commit suicide and wanted to talk to her attorney about her will.[2] *Id.* at 6. She also made suicidal statements such as "just shoot me now." *Id.* at 7. Sgt. Anderson made the decision to put Ms. Meske in a suicidal smock, and he directed a female officer, Deputy Renzelman, to place Ms. Meske in the smock. ECF No. 38 at 9; ECF No. 39 at 2.

The officers provide the following version of events after Sgt. Anderson directed Deputy Renzelman to place Ms. Meske in the suicidal smock:

---

[2] Sgt. Anderson contacted Ms. Meske's attorney and gave the phone to Ms. Meske. She reportedly left a voice message. ECF No. 70 at 6.

Deputy Renzelman states that when she approached Ms. Meske, Ms. Meske attempted to force her way out of the cell by walking into Deputy Renzelman. ECF No. 38 at 2. Deputy Renzelman then directed Ms. Meske to sit down; Ms. Meske initially refused, but eventually sat after being directed to do so by Sgt. Anderson. *Id.* Next, Deputy Renzelman directed Ms. Meske to remove her jewelry. *Id.* Ms. Meske refused and, according to Deputy Renzelman, said "I am a big important person. You are all done, done, I am going to sue you." *Id.* at 3. Deputy Renzelman told Ms. Meske several more times to remove the jewelry, to which Ms. Meske responded "come on and do it" and "come on and take it then." *Id.* Deputy Renzelman states that Ms. Meske then began to stand up, at which time Deputy Renzelman put Ms. Meske's right arm in a wrist lock and placed her on the south wall of the cell. *Id.*; ECF No. 39 at 3. Sgt. Anderson came in and assisted, controlling Ms. Meske's left arm while Deputy Renzelman controlled her right. ECF No. 38 at 3.

While Ms. Meske was restrained, Deputy Renzelman removed Ms. Meske's bracelets. *Id.* Deputy Renzelman states that during this time Ms. Meske continued to try to keep her arm from Deputy Renzelman and said "you are a fat ugly bitch," and "you are only doing this to make yourself feel better." *Id.* Another corrections officer, Deputy MacArthur, then stepped into

the cell and removed the rest of Ms. Meske's jewelry. *Id.* at 4; ECF No. 39 at 3. Deputy Renzelman then removed Ms. Meske's belt, and Ms. Meske allegedly said "you like that, huh" and flicked her tongue at Deputy Renzelman. ECF No. 38 at 4.

Sgt. Anderson and Deputy Renzelman escorted Ms. Meske to a changing room. *Id.*; ECF No. 39 at 3. Sgt. Anderson instructed Ms. Meske that if she did not follow Deputy Renzelman's directions he would assist in changing her clothing. ECF No. 38 at 4; ECF No. 39 at 3. After Sgt. Anderson stepped out, Deputy Renzelman instructed Ms. Meske to remove her shirt and bra. ECF No. 38 at 4. Ms. Meske followed these instructions, then turned to Deputy Renzelman and reportedly said "do you like my titties? They are real unlike yours." *Id.* Rezelman next instructed Ms. Meske several times to remove her pants and boots. *Id.* at 5. Ms. Meske refused and said "do you like what you see" several times. *Id.* Deputy Renzelman states that Ms. Meske then said "come and get it, bitch," at which time Deputy Renzelman grasped Ms. Meske's left arm in escort position. *Id.*

Ms. Meske, who was wearing high-heeled shoes, began to lose her balance and stagger forward, ultimately tripping on a stool in the changing room. *Id.* According to Deputy Renzelman, as Ms. Meske fell, she hit her head

on the wall, hit her side on a stool, and fell to the floor. *Id.* After Ms. Meske fell, she began screaming on the floor. *Id.*

Sgt. Anderson says that at this time he heard Ms. Meske yell, followed by a thumping noise, and then Deputy Renzelman yelling at Ms. Meske to stop resisting. ECF No. 39 at 4. Sgt. Anderson then entered the changing room because he was concerned about Deputy Renzelman's safety. *Id.* He observed Deputy Renzelman in a prone position with Ms. Meske on the floor face down. *Id.* Sgt. Anderson assisted Deputy Renzelman by holding Ms. Meske's lower body while Deputy Renzelman tried to control Ms. Meske's arms. ECF No. 38 at 5; ECF No. 39 at 4. Deputy Renzelman instructed Ms. Meske to stop fighting, but she refused. ECF No. 38 at 5. After multiple orders, Ms. Meske eventually put her right arm behind her back and she was handcuffed. *Id.* at 6. After Ms. Meske was restrained, Sgt. Anderson removed her pants, shoes, and socks. *Id.*; ECF No. 39 at 4. Deputy Renzelman attempted to remove Ms. Meske's underwear, and eventually cut them off using scissors. ECF No. 38 at 6; ECF No. 39 at 4.

Once Ms. Meske's clothing was removed, Deputy Renzelman placed Ms. Meske in a suicide smock, and Deputy Renzelman and MacArthur escorted her to the booking room. ECF No. 38 at 7. Medics examined Ms. Meske and advised the corrections officers to keep an eye on her and call them

if she would not wake up or if her pupils were uneven. ECF No. 39 at 5.

Deputy Renzelman had no further interaction with Ms. Meske. ECF No. 38 at

7. Deputy MacArthur and Sgt. Anderson escorted Ms. Meske to a hold cell and

removed her handcuffs. There were no further incidents. ECF No. 39 at 5.

Ms. Meske provided the following information:

First, she does not remember many specifics from the event and denies

any memory of (1) trying to leave the room or making physical contact with

Deputy Renzelman when Deputy Renzelman initially told her to sit down; (2)

purposefully refusing Deputy Renzelman's directions; (3) being told to stop

fighting; (4) making threatening statements or calling the officers names; (5)

Sgt. Anderson speaking to her; or (6) that she was examined by medics. ECF

No. 50 at 3. She does admit "freaking out" and fighting Deputy Renzelman

and Sgt. Anderson when they attempted to place her in a suicide smock. ECF

No. 70 at 11.

Ms. Meske states that Deputy Renzelman kneed her in the rib cage,

causing a fracture, and that she was beat up. ECF No. 50 at 3. She further

states that being forced to be naked and have her underwear forcefully

removed aggravated trauma stemming from childhood sexual abuse. *Id.* at 4.

She sought medical treatment after her release. *Id.* at 3.

Ms. Meske's medical records support that she sustained serious injuries, including a contusion on her forehead, swelling beneath her right eye, bruising in several locations on her body, and a rib fracture. ECF No. 51-1 at 2–3, 14. The records also reflect that she complained of a serious headache. ECF No. 51-2 at 6. Photographs revealed significant bruising. ECF No. 51-4 at 1–17.

### III.   LEGAL STANDARD

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess

credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Sgt. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015)).

## IV. DISCUSSION

### A. Constitutional Claims

#### 1. Factual questions remain regarding whether Asotin County can be held liable under § 1983.

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, a municipality is responsible for its officials' unconstitutional conduct under § 1983 only if the conduct was caused by a municipal policy, practice, or custom. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). A plaintiff may establish a municipal policy, practice, or custom in one of three ways: (1) "the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal government policy or a longstanding practice or custom which constitutes the standard operating procedure of the [city]"; (2) the plaintiff may show "that the individual

who committed the constitutional tort was an official with final policy-making authority"; or (3) "the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Hooper v. City of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001). Inadequate training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference and was a closely related cause of the alleged violation of a plaintiff's rights. *See City of Canton v. Harris*, 489 U.S. 378, 388– 89, 391 (1989).

Defendants argue that Ms. Meske has not shown any official policy or custom allowing corrections staff to commit unprovoked violence against inmates. ECF No. 34 at 13. Defendants further argue that Defendants have not shown a deliberately indifferent policy of training or supervision that was closely related to the cause of the violation, as required for a failure to train theory. ECF No. 34 at 14.

Ms. Meske argues that the individual defendants alleged unlawful use of force was the result of longstanding customs and practices of Asotin County, including that the Sheriff's department has known of the use of excessive force and constitutional violations, yet has persisted in denying wrongdoing, failing to investigate or discipline, and failing to train or supervise employees. ECF No. 57 at 19. Ms. Meske also asserts that there was no formal training regarding allegedly

suicidal persons and persons with serious mental health conditions in police custody, and that the County had no formal policy for the use of suicidal smocks. ECF No. 57 at 20.

The Asotin County Sheriff's Office Policy and Procedure Manual addresses suicide prevention and mental health management, including by providing that:

> All corrections staff shall be trained in recognizing possible suicidal behavior before being assigned to a permanent duty post. Upon recognizing such behavior, staff will take steps to prevent inmate injury and notify the jail doctor and mental health professionals as soon as possible.

ECF No. 39-2 at 20. And after placing an inmate who is intoxicated in a holding cell, officers are directed to "remove all items from the inmate and holding cell which could be used by the inmate to inflict self-harm." ECF No. 39-2 at 41. The policy does not directly address suicide smocks.

Based on the record before the Court at this time, it is unclear whether Asotin County failed to provide officers working in the Asotin County Jail adequate suicide and mental health training, and if not, whether that inadequate training amounted to deliberate indifference or was related to the alleged constitutional violations here. Ms. Meske's allegations combined with the fact that the Sheriff's Office policy provides little specific detail (and does not address suicide smocks) and that no evidence in the record indicates whether officers received any substantive training on these issues beyond reading the policy, is

sufficient to create a factual question that cannot be resolved on summary

judgment.

**2.    Issues of fact preclude summary judgment on whether the Sgt. Anderson's and Deputy Renzelman's use of force was unconstitutional.**

In assessing a Fourth Amendment excessive force claim, the court must

consider whether the use of force was objectively reasonable, considering (1) the

severity of the plaintiff's alleged crime; (2) whether the plaintiff posed an

immediate threat to the safety of the officers or others; and (3) whether the

plaintiff actively resisted arrest. *Gregory v. City of Maui*, 523 F.3d 1103, 1106

(9th Cir. 2008). Additionally, under the Due Process Clause of the Fourteenth

Amendment, corrections officers may not use force on pre-trial detainees that

amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).

Greater force is permissible where a person is actively resisting arrest, *See Arpin*,

261 F.3d at 912, but reasonableness is always a factual question.

Defendants argue that, even accepting Ms. Meske's claim that Deputy

Renzelman kneed her in the ribs to be true, this force was justified under the

circumstances. ECF No. 34 at 9-10. For the purpose of considering this question,

Defendants ask the Court to credit Deputy Renzelman's and Sgt. Anderson's

account of the incident because Ms. Meske admits to having limited memory of

what occurred, and therefore has not pointed to specific evidence to dispute the officers' assertions. ECF No. 72.

Ms. Meske acknowledges that she does not have a good memory of the incident. But she does not lack memory altogether. And Ms. Meske's claimed lack of detailed memory is believable given that she was intoxicated and allegedly suffered trauma. More importantly, Ms. Meske's medical records support her claims that she suffered relatively severe injuries that may be inconsistent with reasonable restraint or a fall.

In asking the court to simply accept the corrections' officers' statements that their actions were reasonable, Defendants overlook that even under the officers' version of events, this incident is troubling. Law enforcement officers restrained a woman with apparent mental health issues and forcibly removed her clothing, including cutting off her underwear. And someone or something hit her hard enough to break a rib. Further, no evidence has been presented that Ms. Meske was an objective threat to the officers. Instead, the evidence in the record demonstrates only that she was being uncooperative and taunting the officers. On top of that, Ms. Meske's medical records support relatively severe injuries.

A jury may be likely to credit the officers' testimony in light Ms. Meske's lack of memory, but it is impossible to say without evaluating their credibility as witnesses with live testimony. At this summary judgment stage, the Court must

view the evidence in the light most favorable to the non-moving party. Based on the facts presently in the record, a reasonable juror could find that Deputy Renzelman and Sgt. Anderson used unreasonable force to strip Ms. Meske and place her in a suicide smock.

### 3. Sgt. Anderson and Deputy Renzelman are not entitled to qualified immunity at this time.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). To determine whether an official is entitled to qualified immunity, courts generally apply a two-part inquiry: "First, do the facts the plaintiff alleges show a violation of a constitutional right? Second, was the right 'clearly established' at the time of the alleged misconduct." *Carrillo v. Cnty. of L.A.*, 798 F.3d 1210, 1218 (9th Cir. 2015) (internal citations omitted). "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *Id.* (quoting *City & Cnty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015)).

Assuming Sgt. Anderson's and Deputy Renzelman's use of force was excessive, the relevant question for qualified immunity is whether it would have been sufficiently clear to any reasonable officer in the same circumstance that the force used was unlawful. *See id.*; *Byran v. MacPherson*, 630 F.3d 805, 832 (9th Cir. 2010).

Defendants argue that under the circumstances, it was not clearly established that a single strike with the knee as a pain compliance technique on an inmate actively resisting arrest was unconstitutional. ECF No. 34 at 12. Plaintiff's argument reflects her different view of the facts. She argues that no reasonable officer would believe it was lawful to hit a person's head against a wall and knee her so hard that it fractured her rib. ECF No. 57 at 8.

In the Court's view the issue of qualified immunity is not confined to whether Deputy Renzelman in fact kneed Ms. Meske and whether Deputy Renzelman hit Ms. Meske's head against the wall as opposed to Ms. Meske falling and hitting her head. Instead, there are numerous questions relating to the overall use of force here that led to Ms. Meske being restrained and forcibly stripped, resulting in serious injuries. At this time, there is simply not a clear enough picture of the facts to resolve the question of qualified immunity for either Deputy Renzelman or Sgt. Anderson.

**B.** **Issues of fact preclude summary judgment on Ms. Meske's state-law claims.**

Ms. Meske alleges state law battery and intentional or negligent infliction of emotional distress claims. "Battery is '[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent.'" *McKinney v. City of Tukwila*, 13 P.3d 631, 641 (Wash. App. 2000) (quoting W. Page Keeton, et al., *Prosser and Keeton on Torts* § 9 at 39 (5th ed. 1984)). To establish a claim of intentional infliction of emotional distress a plaintiff must show that "(1) he or she suffered severe emotional distress; (2) the emotional distress was inflicted intentionally or recklessly, but not negligently; (3) the conduct complained of was outrageous and extreme; and (4) he or she personally was the subject of the outrageous conduct." *Grange Ins. Ass'n v. Roberts*, 320 P.3d 77, 86 (Wash. App. 2013). Conduct meets this standard only when it is so outrageous and extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* To establish a claim of negligent infliction of emotional distress a plaintiff must prove "duty, breach, proximate cause, damage, and 'objective symptomatology.'" *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 205 (Wash. 2014) (quoting *Strong v. Terrell*, 195 P.3d 977, 982 (Wash. App. 2008)).

First, Defendants argue that Deputy Renzelman and Sgt. Anderson are entitled to state-law qualified immunity with respect to these claims. ECF No. 34 at 15, 17. A police or corrections officer is entitled to qualified immunity under state law where the officer "(1) carries out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) acts reasonably." *Id.* at 640 (quoting *Staats v. Brown*, 991 P.2d 615, 627 (Wash. 2000)); *see also* RCW 9A.16.020(1) (providing that use of force is not unlawful "[w]henever necessarily used by a public officer in the performance of a legal duty."). Deputy Renzelman and Sgt. Sgt. Anderson were carrying out their statutory duty, but as discussed, issues of fact remain regarding whether they acted according to procedures and whether they acted reasonably.

With respect to the emotional distress claims, Defendants also argue that the officers' conduct was not outrageous and extreme and that Ms. Meske has not shown that she suffered from emotional distress or objective symptomatology relating to the incident at issue here. ECF No. 34 at 19. Factual questions preclude resolution of these claims on summary judgment. As discussed, the officers here restrained a woman with apparent mental health issues and forcibly removed her clothing, and she suffered serious injuries. A reasonable juror could find that these facts support an emotional distress claim.

# V. CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

1.   Defendants' Motion for Summary Judgment, ECF No. 34, is **DENIED**.

2.   Defendant's Motion for Partial Summary Judgment for Failure to Produce and Compute Damages, **ECF No. 41**, is **GRANTED**. Plaintiff's claim for lost-wages damages is **DISMISSED**.

3.   Defendant's Motion to Establish Undisputed Facts, **ECF No. 72**, is **DENIED**.

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 21st day of September 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge